NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 07-CV-116-HRW

CHRIS R. SHARPE                                                                          PETITIONER

VS:                          **MEMORANDUM OPINION AND ORDER**

ATTORNEY GENERAL OF THE UNITED STATES, et al.                       RESPONDENT

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

This matter is ripe for a decision, Sharpe's warden having now filed a Response to his Petition for Writ of Habeas Corpus.

BACKGROUND

On December 7, 2007, Chris R. Sharpe, an individual confined in the Federal Prison Camp ("FPC") in Ashland, Kentucky, submitted the instant *pro se* Petition, brought pursuant to 28 U.S.C. § 2241. He stated therein that he is indigent and qualified for a Public Defender in the criminal proceeding against him in the United States District Court for the Western District of North Carolina, *United States v. Chris Reynard Sharpe*, Case Number 5:05-CR-1-1-V.

On June 30, 2006, the district court sentenced Sharpe to two concurrent 21-month prison terms, ordered him to pay a $200 assessment, did not impose a fine, but directed that he also pay $1,526,160.50 in restitution. Petitioner claimed that at the time of sentencing, the presiding judge told him that he would not have to pay restitution until after he had finished his sentence.

Upon his arrival at the Federal Prison Camp, however, Petitioner alleges a series of disputes with Bureau of Prisons ("BOP") personnel about his court-ordered financial obligations. Sharpe complains that the BOP has wrongly assessed amounts of money for him to pay monthly and

required payments of the amounts from his inmate account, despite the BOP having no authority to do so and the trial court's having promised that he did not have to pay restitution during the term of imprisonment.

Moreover, Petitioner alleged that the amounts are excessive, *e.g.* his most recent assessment calling for monthly payments of $93, even though he earns only $23.80 per month at his prison job. Further, because Sharpe has not cooperated in making these payments, he has been put into a "Refuse" classification which makes him ineligible for some beneficial programs offered by the BOP.

Upon screening the initial submissions, the Court directed service of the Petition on Sharpe's Warden, B. Patton, for him to respond to Sharpe's allegations that the BOP has been setting restitution amounts and requiring payments in those amounts from this prisoner's inmate account (1) in contravention of his trial court's Judgment of Conviction; (2) in violation of 18 U.S.C. §§ 3663-3664; (3) thereby exceeding the BOP's authority and usurping that of the Court; and (4) penalizing the Petitioner for not participating in the BOP's Inmate Financial Responsibility Program ("IFRP"), in violation of the Eighth Amendment guarantee of freedom from cruel and unusual punishment.

In a subsequent pleading, the Petitioner supplied copies of cases, from outside the Sixth Circuit, which have held that it is improper for the BOP to set the plan for restitution payments to be made under the IFRP, as it is a usurpation of authority which Congress delegated only to the federal courts.

RESPONSE TO THE PETITION

In response to the Petition, the Warden first informs the Court of the identity of Sharpe's

current warden at the Ashland FPC, Kenneth Cauley, and the Court will order a substitution of parties to correct the record. The Respondent then gives background information about the Petitioner and states that his projected release date is September 12, 2008, via good conduct time.

As authority for requiring the Petitioner's participation in the IFRP, Respondent attaches a copy of Sharpe's June 30, 2006 Criminal Judgment, which contains the following provision: "That during the period of imprisonment monetary penalty payments shall be made through the Federal Bureau of Prison's Inmate Financial Responsibility Program." Exhibit [hereinafter "Ex."] B. The Warden's position is that the IFRP is thus authorized to exact payments from Petitioner in this portion of the Judgment, and that "[n]o documentation from the sentencing court delays Sharpe's financial obligations until his release from prison." Additionally, the Respondent relies on another section of the Judgment which directs that payments "begin immediately."

Respondent then explains the terms and purposes of the IFRP regulations, contained in 28 CFR §§ 545.10-11, and the provisions of a Program Statement, P.S. 5380.08, *Financial Responsibility Program, Inmate*, effective January 27, 2000, which the BOP authored, to provide guidance to correctional institutions as to court-ordered fines, restitution, and other financial obligations; the method for calculating the amount(s) to be paid; and the effects of non-participation. Ex. C.

The government also attaches the declaration of a FPC Corrections Counselor, named Rick Lutz, who details Petitioner's limited participation in the IFRP. At Sharpe's first interview after arrival at the FPC, on March 14, 2007, he entered into a contract to begin payments of $25.00 quarterly. It was apparently in a September review, that Petitioner was told that amount would be increased to $280 per quarter beginning in December of 2007, based on the monies deposited in his

inmate account.  When the Petitioner refused to sign such a contract, he was put in "Refuse" status.

Lutz also updates events since Petitioner was classified as "Refuse."  When December arrived, the amount of the planned payments was amended down to $41.00 monthly, and the payments were to be made outside the IFRP, after staff verified that Sharpe had been paying on the restitution debt via outside sources throughout the fall of 2007.  Petitioner agreed to this, and the BOP changed his status to "Participating."  As of the date of Lutz's declaration, March 12, 2008, Petitioner had paid the $200 court assessment and $403.00 towards restitution, leaving a $1,525,757.50 restitution balance due.

Finally, the Respondent presents two legal arguments, the first being that the Court lacks jurisdiction over this matter, as Sharpe is challenging a condition in the sentence imposed on him, a claim which should be presented to the trial court in North Carolina.  Second, he contends that requiring Sharpe to participate in the IFRP is proper.  The Warden cites to Sixth Circuit cases, one being *Weinberger v. United States*, 268 F.3d 346, 360 (6th Cir. 2001), which supports making restitution payments through the BOP's program.

Additional Pleading

Although not authorized to do so, the *pro se* Petitioner has filed a Reply, which the Court has considered nonetheless.  In it, Sharpe argues against several portions of Lutz's declaration and contends that the BOP's determination of amounts to be paid is contrary to the terms of 18 U.S.C. §§ 3572 and 3663.  Further, the IFRP is not voluntary, as the BOP claims, because non-participation is punished.  He attaches copies of pages from some of his legal research into the cited statutes, the Constitutional provisions allegedly violated, and the IFRP.

DISCUSSION

Inmate Financial Responsibility Act

The Court begins with exactly what the IFRP is.  It has been well explained by the appellate

court in this circuit in the *Weinberger* case upon which the Respondent relies:

> [Weinberger] contends that the district court improperly delegated the
> scheduling of his restitution payments while in prison by ordering that "[t]he
> Defendant shall pay restitution ... through the Bureau of Prisons Inmate Financial
> Responsibility Program."
>
> The IFRP is a work program instituted by the Bureau of Prisons to encourage "each
> sentenced inmate to meet his or her legitimate financial obligations." *Montano-
> Figueroa v. Crabtree,* 162 F.3d 548, 548 (9th Cir.1998) (quoting 28 C.F.R. §
> 545.10). The program allows for the development of a financial plan that allows
> inmates to pay enumerated obligations, such as restitution payments, while
> incarcerated. *See ibid.* (citing 28 C.F.R. § 545.11).

*Weinberger v. United States*, 268 F.3d at 361.  In a footnote, the Court continued with a description

of the process for setting an inmate's payment schedule under the Plan, writing as follows:

> The IFRP establishes the following process for setting an inmate's payment schedule.
> (a) Developing a Financial Plan. At initial classification, the unit team shall review
> an inmate's financial obligations, using all available documentation, including, but
> not limited to, the Presentence Investigation and the Judgment and Commitment
> Order(s). The financial plan developed shall be documented and will include the
> following obligations, ordinarily to be paid in the priority order as listed: (1) Special
> Assessments imposed under 18 U.S.C. 3013; (2) Court-ordered restitution; (3) Fines
> and court costs; (4) State or local court obligations; and(5) Other federal government
> obligations.28 C.F.R. § 545.11(a).

*Id*. at fn 5.  Additionally, the appellate court noted that under the IFRP regulations, an inmate's

refusal to comply with the provisions of his financial plan "'shall result' in up to ten possible

punishments, including not receiving bonus pay or vacation pay, being subject to a more stringent

monthly commissary spending limitation, and being quartered in the lowest housing status." *Id.* at

fn 6 (quoting from 8 C.F.R. § 545.11(d)).

A copy of the Program Statement governing the program, dated effective January 27, 2000,

has been provided by the Respondent. It shows that the IFRP is unchanged since the Sixth Circuit's description.

### Application of IFRP to Sharpe

Counselor Lutz has chronicled the periods of Sharpe's participation and non-participation in the IFRP during the 2007 calendar year, and the Petitioner has not refuted any part of his Declaration. Briefly summarized, Sharpe contracted to pay $25.00 quarterly in March of 2007; refused to agree to $280 quarterly the following September; and was put in "Refuse" status in November. In December, upon verifying that payments had been made toward restitution from outside sources, the staff approved and Sharpe agreed to continue to pay outside the IFRP in lower amounts. Therefore, the BOP changed Petitioner's status "Participating."

The record herein shows that Sharpe signed the instant Petition on November 19, 2007, while he was in Refuse status. At that time, the relief which he requested was for the Court to "order that Petitioner will be taken off refusal status and he pay according to what the Court ordered." Time passed while Sharpe forwarded the Petition to the Clerk of the Court, Petitioner arranged for payment of the habeas filing fee, the Court screened the initial pleading, and the Respondent was served.

By the time that the Response was filed herein, Sharpe had fully paid the court-ordered assessment; had been taken off "Refuse" status; and was making restitution payments on his own, not within the IFRP. In other words, Sharpe had achieved the relief which he had requested, *i.e.*, no IFRP payments from his inmate account and the removal of his "Refuse" status. The matter at issue herein was mooted in the time between the filing of the Petition and the filing of the Response.

Federal courts may not rule on moot issues. A case becomes moot if the "the issues

6

presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt,* 455 U.S. 478, 481 (1984).  The Federal Court is "without power to decide questions that cannot affect the rights of the litigants before them" *North Carolina v. Rice,* 404 U.S. 244, 246 (1971) ( *per curiam*) ( *quoting Aetna Life Ins. Co. v. Hayworth,* 300 U.S. 227, 240-241 (1937).

Thus, if an intervening event prevents the Court from granting any effective relief, the case must be dismissed.  *See Calderon v. Moore,* 518 U.S. 149, 150 (1996) (per curiam).  This problem has been encountered with regard to the BOP collecting IFRP monies from other prisoners.  *See Udogwu v. Zickefoose*, 2007 WL 708781, *2 (D.Conn. February 27, 2007) (slip op.) (After the filing of the Section 2241 petition, the prisoner's amount of payment was reduced to its previous level; since that reduction was the only relief which Udogwu requested, the petition was denied because the Court could grant her no effective relief); *Allen v. Schultz*, 2006 WL 2038036, *5 (E.D.Cal. 2006) (slip op.) ("The BOP is . . .  no longer attempting to collect money from Petitioner through IFRP and his claim is now moot.  Because the claim is moot, the Court will not address the merits").

In light of the determination that the matter has been mooted, the Court does not reach the arguments of either of the parties.  It would have been tempting to wade into the debate and the split in the circuits on the issue of whether a district court can delegate the setting of a restitution payment schedule to the BOP.  *See United States v. Overholt*, 307 F3d 1231 (10th Cir. 2002) (listing cases).  Indeed, the Court is disappointed that the Respondent did not discuss the difference(s) in two opinions in this circuit, upholding a delegation to the BOP in *Weinberger,* and distinguishing *Weinberger* and finding the delegation impermissible in *United States v. Davis*, 306 F.3d 398 (6th Cir. 2002), *cert. denied*, 537 U.S. 1208 (2003).  However, that discussion will await another day.

<u>CONCLUSION</u>

7

Accordingly, **IT IS HEREBY ORDERED** as follows:

(1)     Kenneth Cauley being the current warden having custody of the Petitioner, he is **SUBSTITUTED** as the Respondent and the Clerk of the Court shall terminate B. Patton and substitute Cauley as the Respondent in the docket.

(2)     Chris R. Sharpe's Petition for Writ of Habeas Corpus is **DENIED** for mootness.

(3)     This action is **DISMISSED**, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of Respondent Cauley.

This May 29, 2008.

Signed By:

_Henry R Wilhoit Jr._

United States District Judge